UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAWN M.,[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-0258
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Dawn M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 14, *Defendant's Memorandum in Opposition*, ECF No. 16, *Plaintiff's Reply*, ECF No. 17, and the *Certified Administrative Record*, ECF No. 11. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors* and reverses the Commissioner's decision and remands the action for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I. **PROCEDURAL HISTORY**

On May 13, 2015, Plaintiff filed her current applications for benefits, alleging that she has been disabled since November 12, 2013, due to a number of physical and mental impairments. R. 266-73.[3] The applications were denied initially and upon reconsideration. R. 82-107, 110-39, 142-73. The applications were also denied following an administrative hearing before an Administrative Law Judge. *See* R. 12-40, 1-6. However, that decision was reversed by this Court upon the parties' joint motion to remand. *Dawn M[.] v. Commissioner of Social Security Administration*, 3:19-cv-010 (S.D. Ohio July 17, 2019). On remand, Administrative Law Judge Stuart Adkins ("ALJ") conducted a second administrative hearing on February 5, 2020, at which Plaintiff, who was represented by counsel, testified, as did the same vocational expert who had testified at the original hearing. R. 1656-95. In a decision dated April 21, 2020, the ALJ concluded that Plaintiff not disabled within the meaning of the Social Security Act at any time from her alleged disability onset date through the date of that decision. R. 1610-55. The matter is now once again before this Court, and the parties do not challenge this Court's jurisdiction under 42 U.S.C. § 405(g). On March 22, 2022, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

II. **LEGAL STANDARD**

A. **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v.*

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

2

*Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means–and means only–such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

In a lengthy written decision, R. 1613-46, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity between November 12, 2013, her alleged disability onset date, and the date of the decision. R. 1617.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: fibromyalgia, degenerative joint disease, arthritis, lumbar degenerative disc disease, drop foot, migraines, an aneurysm, gastroesophageal reflux disease, asthma, obstructive sleep apnea, restless leg syndrome, hypertension, obesity, anxiety, and an affective disorder. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing, including Listing 1.02, which addresses major dysfunction of a joint, "because she maintains the ability to ambulate effectively as defined in 1.00B2b." *Id*.

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of sedentary work. R. 1620-21. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a home attendant and a telephone solicitor. R. 1644.

At step five, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs—*i.e.*, approximately 80,000 sorter jobs, 70,000 inspector jobs, and 50,000 document preparer jobs—exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 1644-45. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged disability onset date through the date of the decision. R. 1645.

Plaintiff disagrees with the ALJ's findings at step three, as it relates to Listing 1.02, and at step four. She asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors,* ECF No. 14; *Plaintiff's Reply Brief,* ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 16.

IV. **DISCUSSION**

Plaintiff suffered a brain aneurysm in November 2013, and since that time she has complained of migraine headaches with associated photophobia, sensitivity to sound, and nausea. As the ALJ found, Plaintiff also suffers from depression, anxiety, and agoraphobia. Plaintiff also suffers from degenerative joint disease of the right foot, for which she wears a brace and which requires the use of a cane and, for long distances, a walker. *See generally* R. 14-79, 1656-1695.

A. **Listing 1.02**

As it relates to Plaintiff's foot impairment, the ALJ found at step three that Plaintiff does not meet Listing 1.02 "because she maintains the ability to ambulate effectively as defined in 1.00B2b." R. 1617. Plaintiff disagrees with that finding and conclusion.

A claimant's impairment must meet every element of a Listing before the Commissioner can conclude that she is disabled at step three of the sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920. "The burden of providing a … record … complete and detailed enough to enable the [Commissioner] to make a disability determination rests with the claimant." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). It is not sufficient to merely come close to meeting the conditions of a Listing. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989)(Decision denying benefits affirmed where medical evidence "almost establishes a disability" under a Listing).

As noted, the ALJ found that Plaintiff's impairments did not meet Listing 1.02 because Plaintiff did not establish that she was unable to ambulate effectively, as is required by Listing 1.00B2b. That Listing provision defines "[i]neffective ambulation … as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  Plaintiff testified at the first administrative hearing that she takes her walker if she's "going to be walking more than a block." R. 62. Plaintiff testified at the second hearing that, when she does not wear the brace on her leg, she uses her cane "and if I walk further, you know, longer distance then I'll use my walker, or I'll use my husband too." R. 1673. "If I'm walking longer distances, say we're going to a festival, … or something – then I have to use – even with the brace on I have to use my walker – instead of the cane." R. 1673-74. Although the ALJ did not elaborate on Plaintiff's ability to ambulate at step three of the sequential evaluation, he did so in his detailed evaluation

7

of the evidence. According to the ALJ, "A thorough review of the claimant's records reflects no mention of her actually using a walker at appointments during the period under review despite saying it was recommended by physicians and used for long distance, and few records suggest that she ever presented with a cane." R. 1625. Moreover, in his RFC determination, the ALJ limited Plaintiff to "jobs that would allow her to use a single-point cane." R. 1620, 1643. A fair reading of the ALJ's decision convinces this Court that the ALJ's determination that Plaintiff neither met nor equaled Listing 1.02 enjoys substantial support in the record.

**B. Obesity**

As previously noted, the ALJ included obesity in Plaintiff's severe impairments. R. 1617. Plaintiff complains, however, that the ALJ failed to adequately explain his evaluation of that impairment.

An ALJ must "consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejal v. Comm'r of Soc. Sec.*, 359 Fed.App. 574, 577 (6th Cir. 2009). "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-1p, 2002 WL 34686281, at *2. It must be considered throughout the ALJ's evaluation. *Shilo v. Comm'r of Soc. Sec.*, 600 F.App'x 956, 959 (6th Cir. 2015). However, the ALJ "is not required to use any 'particular mode of analysis' in assessing the effect of obesity." *Id.* (quoting *Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 411-12 (6th Cir. 2006)).

In his decision, the ALJ recognized his obligation to consider Plaintiff's obesity and expressly considered that impairment, as well as Plaintiff's substantial weight loss following bariatric surgery, at steps three and four of the sequential evaluation. R. 1618, 1622. The ALJ found that "the symptoms and limitations related to the claimant's obesity and treatment are fully addressed" in the RFC for a reduced range of sedentary work. R. 1631. The Court concludes that

the ALJ's evaluation of Plaintiff's obesity conformed to required standards and is supported by substantial evidence in the record.

### C. Migraines

The ALJ also included Plaintiff's migraines in the list of severe impairments, R. 1617, and also expressly considered that condition at step three and step four of the sequential evaluation. R. 1618, 1622. Plaintiff complains that the ALJ erred in failing to include in the RFC all the limitations that Plaintiff alleges accompany those headaches.

A claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective complaints, an ALJ must first determine whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the ALJ must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

The ALJ recognized Plaintiff's subjective complaints of photophobia, sensitivity to sound, and nausea. R. 1622, 1626, 1627. However, the ALJ noted improvement with treatment and found that "the gaps in treatment from her neurologist, along with the relatively normal functioning on her examinations, does not support symptoms as intense, persistent, or limiting as alleged." R. 1628. In his RFC determination, the ALJ, *inter alia*, limited Plaintiff to only occasional exposure to loud noises and found that Plaintiff should avoid unprotected heights,

dangerous machinery and commercial driving. R. 1621. This Court concludes that the ALJ properly considered the evidence of record in this regard and that his findings and conclusions enjoy substantial support in the record. Under these circumstances, this Court is without authority to disturb those findings and conclusions.

### D. Evaluation of Medical Opinions and the RFC

The administrative record is lengthy, reflecting extensive treatment of Plaintiff's various impairments, and contains opinions rendered by Plaintiff's various treating physicians, consultative examiners, and reviewing consultants. Plaintiff complains that the ALJ erred in his evaluations of those opinions and in finding that Plaintiff's RFC includes only a limitation to occasional interaction with supervisors and coworkers.

An ALJ must consider all medical opinions in evaluating a claimant's applications. 20 C.F.R. §§ 404.1527(c), 416.927(c). Under the regulations in force at the time that Plaintiff filed her applications, the opinion of a treating provider must be accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and not "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Commissioner must provide "good reasons" for discounting the opinion of a treating provider, and those reasons must both enjoy support in the evidence of record and be sufficiently specific to make clear the weight given to the opinion and the reasons for that weight. *Gayheart v. Comm'r of Soc. Sec*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers,* 486 F.3d at 242 (citing Soc. Sec. Rul. 96- 2p, 1996 WL 374188, at *5). However, a formulaic recitation of factors is not required. *See Frien v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) ("If the ALJ's opinion permits a claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict

compliance with the rule may sometimes be excused.").

Where, as here, the ALJ does not assign controlling weight to the opinion of a claimant's treating physician, the ALJ must explain the weight assigned to the opinions of all medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii).

In the case presently before the Court, the ALJ provided extensive, detailed, and thoughtful consideration of the voluminous medical record and the multiple medical opinions. R. 1621-43. Rather than recounting in detail that consideration, the Court will focus on the single finding of the ALJ that requires remand of the action.

In July 2014, Giovanni Bonds, Ph.D., performed a consultative psychological examination of Plaintiff at the request of the state agency. R. 366-75. Dr. Bonds diagnosed a panic disorder with agoraphobia and depressive disorder, not otherwise specified. R. 373. In addressing Plaintiff's ability to respond appropriately to supervision and to coworkers in a work setting, Dr. Bond commented that Plaintiff "avoid[s] people and socializing with them." *Id*.

The medical record was reviewed by a number of state agency consulting psychologists. In August 2014, Karen Steiger, Ph.D., reviewed the records relating to Plaintiff's affective disorders and anxiety-related disorders, concluded that Plaintiff's mental impairments neither met nor equaled a Listed impairment, R. 86-88, and opined, *inter alia*, that Plaintiff "retains the ability to interact with co-workers and supervisors on a superficial level, but contact with the general public should be kept to a limited basis." R. 91. In August 2015, Joseph Edwards, Ph.D.,

11

reviewed the record and opined, *inter alia*, that, as a result of Plaintiff's mental impairments, she "would have moderate difficulty interacting with others but could have infrequent, superficial interactions with others. Contact with the general public should be limited." R. 121. In December 2015, Courtney Zeune, Psy.D., reviewed the record and opined that Plaintiff's mental impairments would limit her to "infrequent, superficial interactions with others." R. 154.

The ALJ accorded "partial weight" to all these opinions. R. 1638, 1639-40. Specifically, the ALJ stated that he adopted "the spirit" of their opinions in the RFC, except that Dr. Bonds utilized terms that "are vocationally vague and undefined," R. 1639, and the reviewing psychologists' use of the term "superficial," in describing Plaintiff's ability to interact with others, was "vocationally irrelevant" and "undefined." R. 1638-39. Instead, the ALJ found that Plaintiff had the RFC to "tolerate occasional interaction with supervisors and coworkers, but she should have no interaction with the general public." R. 1621. The ALJ also posed to the vocational expert a hypothetical containing those terms. R. 1689-90. In response, the vocational expert testified that there exist a significant number of jobs in the national economy that a claimant with Plaintiff's vocational profile and that RFC could perform. *Id*. Relying on that testimony, the ALJ concluded that Plaintiff was not disabled.

Plaintiff complains that the ALJ erred in crafting Plaintiff's RFC by failing to include, or to properly explain the failure to include, a limitation to only superficial contact with supervisors and coworkers. This Court agrees.

A claimant's RFC is the most that the claimant can perform despite her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). It is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). However, the ALJ's RFC determination, as must all findings by the ALJ, be supported by substantial evidence. *Richardson v. Perales*,

402 U.S. 389 (1971).

The terms "occasional" and "superficial" are not interchangeable. *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas "superficial contact' goes to the quality of the interactions.") (citations omitted). The ALJ in this case explained that he omitted any reference to "superficial" interactions in the RFC because the term is "vocationally irrelevant," R. 1638, 1639, and because a number of terms used by Dr. Bonds "are vocationally vague and undefined." R. 1639. However, this Court has held that the term "superficial" in describing a claimant's ability to interact with others "is a well-defined limitation in the Social Security context." *Spinner v. Comm'r of Soc. Sec.*, No. 2:20-cv-4676, 2021 WL 7908552, at *2 (S.D. Ohio Nov. 29, 2021). Even more important, the vocation expert addressed, at the first administrative hearing, the vocational significance of superficial interaction with a claimant's supervisor:

> Q. Is it important that all employees are able to respond appropriately to instructions and accept supervisor criticism -- is that correct?
>
> A. Correct.
>
> Q. Would you classify supervisor criticism as superficial?
>
> A. No.

R. 75. Thus, although an ALJ is not required to adopt a medical opinion that would limit a claimant to only superficial interaction with supervisors and coworkers, the ALJ must, as with any assessment of a medical opinion, explain why that opinion is not supported by the evidence in the record. Because the ALJ in this case failed to do so, the matter must be remanded to the Commissioner for further consideration of this issue.

V.      CONCLUSION

13

For these reasons, the Court **GRANTS** *Plaintiff's Statement of Errors,* **REVERSES** the Commissioner's decision, and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date:  June 7, 2022                               *s/Norah McCann King*
                                                    NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE